UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT APPLEBAUM,

                    Plaintiff,

    -v-

MAGONIS BOATS US LLC and MAGONIS BOATS SL,

                  Defendants.

CIVIL ACTION NO. 24 Civ. 1861 (JHR) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE JENNIFER H. REARDEN**, United States District Judge:

## I. INTRODUCTION

In this breach of warranty action, Plaintiff, Robert Applebaum ("Mr. Applebaum") seeks relief from Defendants Magonis US LLC ("Magonis US") and Magonis Boats SL ("Magonis SL," together, "Defendants") for the delivery of a nonfunctional and nonmarketable electric recreational boat (the "Boat") that Mr. Applebaum purchased from Defendants. (Dkt. No. 1 (the "Complaint")). On September 2, 2025, the Honorable Jennifer H. Rearden granted Mr. Applebaum's motion for a default judgment against Defendants (Dkt. No. 27 (the "Motion")) and referred this matter to the undersigned to conduct an inquest on damages. (Dkt. Nos. 32–33). Mr. Applebaum submitted an attorney declaration from Daniel H. Wooster (the "Wooster Declaration") with multiple exhibits (Dkt. Nos. 29; 29-1–29-11 (the "First Damages Submission")), as well as a valuation of the Boat at the time of acceptance from Electrified Marina, an electric boat dealer. (Dkt. No. 39-1 (the "Supplemental Damages Submission," with the First Damages Submission, the "Damages Submissions")).

Having reviewed the Damages Submissions, and for the reasons set forth below, the Court respectfully recommends that Mr. Applebaum be awarded:

1. Compensatory damages in the amount of $26,177.00, consisting of:

   a. Breach of warranty damages in the amount of $19,900.00;

   b. Sales Tax in the amount of 1,393.00;

   c. Marina storage fees in this amount of $4,320.00;

   d. Insurance premium in the amount of $564.00;

2. Prejudgment Interest in the amount of $5,501.85;

3. Attorneys' fees in the amount of $20,317.50; and

4. Costs in the amount of $1,138.43.

## II. BACKGROUND

Given Defendants' default, we accept as true all well-pleaded factual allegations in the Complaint, except as to damages. See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("it is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)); Whitehead v. Mix Unit, LLC, No. 17 Civ. 9476 (VSB) (JLC), 2019 WL 384446, at *1 (S.D.N.Y. Jan. 31, 2019).[1]

### D. Factual Background

On September 9, 2022, Mr. Applebaum purchased the Boat and its accessories from Defendants pursuant to a purchase agreement dated May 19, 2023. (Dkt. Nos. 1 ¶ 11; 29-11 (the "Purchase Agreement")). Magonis Boats SL manufactured the Boat in Spain and imported the

---

[1] Internal citations and quotations are omitted from case citations unless otherwise indicated.

Boat through Magonis US to be delivered to Mr. Applebaum in Tennessee. (Dkt. No. 1 ¶ 12). Defendants agreed to deliver the Boat to Mr. Applebaum within 14–16 weeks after Mr. Applebaum paid a 50% deposit. (Id.) On September 12, 2022, Mr. Applebaum paid Magonis US the deposit of $46,075.00, but Magonis US did not timely deliver the Boat. (Id. ¶¶ 15–16). Rather, Defendants informed Mr. Applebaum that the boat he purchased "was having problems with its electronic control unit," and Mr. Applebaum had the choice of waiting several months for its repair or accepting a "brand-new substitute boat[,] which had a model-year 2022 hull with the features of the model-year 2023." (Id. ¶¶ 17–18). Defendants represented that they would deliver the substitute by July 14, 2023. (Id. ¶ 19). Mr. Applebaum accepted the latter option, and on July 11, 2023, Mr. Applebaum paid the remaining balance on the Boat, another $46,075.00. (Id. ¶ 20).

On July 13, 2023, one day earlier than expected, Mr. Applebaum received the Boat, but on inspection, Mr. Applebaum noticed "multiple non-conformities," including a nonfunctional electric propulsion motor and electronic control unit and the absence of an engine cut-off switch, which is a safety device mandated in the United States. (Dkt. No. 1 ¶ 21). Not only would the Boat "not run" but it also failed to comply with multiple safety regulations mandated by the United States Coast Guard. (Id. ¶¶ 22–23). In addition, Mr. Applebaum noticed that the Boat's identification number related to a company other than Defendants', violated boating safety regulations as to form, and indicated that the Boat was a model year 2021, not 2022 as Defendants represented. (Id. ¶¶ 24–25). On August 1, 2023, Mr. Applebaum provided written notice of the above-mentioned issues to Defendants and requested a refund, but to date, Defendants have not issued Mr. Applebaum a refund nor repossessed the Boat. (Id. ¶¶ 27–28).

### D. **Procedural Background**

On March 12, 2024, Mr. Applebaum filed the Complaint, alleging (1) a violation of the Magnusson-Moss Warranty Act; (2) a claim under the Uniform Commercial Code ("UCC") § 2-711; (3) conversion; and (4) unjust enrichment. (Dkt. No. 1). Defendants failed to respond the Complaint by the deadline of April 30, 2024. (See Dkt. No. 8). On May 9, 2024, the Honorable Jennifer H. Rearden issued an Order to Show Cause directing Mr. Applebaum to move for default judgment or show cause as to why his claims should not be dismissed for failure to prosecute. (Dkt. No. 9).

On May 10, 2024, the Clerk of the Court entered a Certificate of Default ("CoD") against Defendants. (Dkt Nos. 16–17). On May 20, 2024, Mr. Applebaum filed the Motion, which the Court denied without prejudice for failure to file a memorandum of law. (Dkt. Nos. 19; 24). On June 25, 2025, Mr. Applebaum re-filed the Motion. (Dkt. No. 27). On September 2, 2025, Judge Rearden granted the Motion and referred the matter to the undersigned to conduct an inquest on damages. (Dkt. No. 32–33).

The Court ordered Defendant to respond to the Damages Submission no later than September 17, 2025, but to date, Defendants have not filed a response. (Dkt. No. 34). On October 21, 2025, the Court ordered Mr. Applebaum to supplement the Damages Submission with evidence showing the difference in value of the Boat as warranted and as accepted. (Dkt. No. 36 (the "Oct. 21 Order")). On November 11, 2025, Mr. Applebaum responded to the Oct. 21 Order with the Supplemental Damages Submission. (Dkt. No. 39–39-1). To date, Defendants have not responded to the Damages Submissions.

4

## III. DISCUSSION

### A. Legal Standards

#### 1. Obtaining a default judgment

A party seeking a default judgment must follow the two-step procedure set forth in Federal Rule of Civil Procedure 55.  See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186–87 (2d Cir. 2015).  First, under Rule 55(a), where a party has failed to plead or otherwise defend in an action, the Clerk of the Court must enter a certificate of default.  See Fed. R. Civ. P. 55(a).  Second, after entry of the default, if the party still fails to appear or move to set aside the default, the Court may enter a default judgment.  See Fed. R. Civ. P. 55(b).  Whether to enter a default judgment lies in the "sound discretion" of the trial court.  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  Because a default judgment is an "extreme sanction" that courts are to use as a tool of last resort, Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981) (per curiam), the district court must "carefully balance the concern of expeditiously adjudicating cases, on the one hand, against the responsibility of giving litigants a chance to be heard, on the other."  Lopez v. Emerald Staffing, Inc., No. 18 Civ. 2788 (SLC), 2020 WL 915821, at *4 (S.D.N.Y. Feb. 26, 2020).

In considering whether to enter a default judgment, district courts are "guided by the same factors [that] apply to a motion to set aside entry of a default."  First Mercury Ins. Co. v. Schnabel Roofing of Long Is., Inc., No. 10 Civ. 4398 (JS) (AKT), 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011).  "These factors include:  (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense."  Avail 1 LLC v. Latief, No. 17 Civ. 5841 (FB) (VMS), 2020 WL

5633869, at *4 (E.D.N.Y. Aug. 14, 2020), adopted by, 2020 WL 5633099 (E.D.N.Y. Sept. 21, 2020) (citing Swarna v. Al-Awadi, 622 F.3d 123, 142 (2d Cir. 2010)).  "The standard for setting aside a [CoD] is more lenient than that for vacating a default judgment[.]"  Dranitca v. Allied Universal, No. 22 Civ. 5120 (JLR) (SLC), 2024 WL 3454971, at *3 (S.D.N.Y. Jan. 5, 2024).

### 2. Determining liability

A defendant's default is deemed "a concession of all well-pleaded allegations of liability," Rovio Ent., Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants."  Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F. App'x 111, 113 (2d Cir. 2015) (summary order).  The Court must determine "whether the allegations in [the] complaint establish the defendants' liability as a matter of law."  Id.  If the Court finds the well-pleaded allegations establish liability, the Court analyzes "whether plaintiff has provided adequate support for the relief it seeks."  Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008).  If, however, the Court finds that the complaint fails to state a claim on which relief may be granted, the Court may not award damages, "even if the post-default inquest submissions supply the missing information."  Lopez v. Emerald Staffing, 2020 WL 915821, at *4.

### 3. Determining damages

Once liability has been established, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  Getty Images (US) Inc. v. Advernet, Inc., 797 F. Supp. 2d 399, 411 (S.D.N.Y. 2011) (citing Credit Lyonnais Sec. (USA) v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  A plaintiff "bears the burden of establishing [his] entitlement to recovery and thus must substantiate [his] claim with evidence to prove the extent of

6

damages." Lopez v. Emerald Staffing, 2020 WL 915821, at *5. The evidence the plaintiff submits must be admissible. See Poulos v. City of New York, No. 14 Civ. 3023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), adopted by, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); see also House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("damages must be based on admissible evidence"). If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary hearing. Fustok v. ContiCommodity Servs. Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (noting that a court may determine appropriate damages based on affidavits and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment").

B. **Default Judgment**

In accordance with the two-step process in Rule 55, the Clerk of the Court entered a CoD against Defendants (Dkt. Nos. 16–17), and Defendants have failed to challenge the default or appear in this action at all. (See Dkt. Nos. 34; 36).

The Court's analysis of the relevant factors set forth above reveals, first, that Defendants' failure to respond to the Complaint, after having been properly served, or submit any written response to the Damages Submissions, gives rise to the fair inference that their default was willful. See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that failure to respond to complaint and subsequent motion for default judgment "indicate[d] willful conduct"). Second, denial of the Motion would prejudice Mr. Applebaum because "there are no additional steps available to

7

secure relief in this Court." Haydel v. Exponential Wealth Inc., No. 21 Civ. 10604 (JGK) (SLC), 2023 WL 8438475, at *7 (S.D.N.Y. Sept. 8, 2023), adopted by, 2023 WL 8439070 (S.D.N.Y. Dec. 5, 2023); Bridge Oil Ltd. v. Emerald Reefer Lines, LLC, No. 06 Civ. 14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008).  Third, because Defendants have failed to respond to the Complaint, or appear at all, they have not presented any meritorious defenses.  Because the requirements of Rule 55 have been satisfied and the relevant factors weigh in Mr. Applebaum's favor, default judgment against Defendants is warranted.

### C. Liability

As noted above, before entering a default judgment, the Court must "determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." Moore v. Booth, 122 F.4th 61, 69 (2d Cir. 2024).  The Court has not previously analyzed the elements of any of Mr. Applebaum's claims and therefore must do so here.  Mr. Applebaum alleges:  (1) a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq. (the "MMWA"); (2) a claim under UCC § 2-711[2]; (3) conversion; and (4) unjust enrichment.  (See generally Dkt. No. 1).

#### 1. Jurisdiction and Venue

As a threshold matter, the Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Mr. Applebaum's claims arise under the MMWA.  Alternatively, the Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because Defendants are each diverse from Mr. Applebaum and the amount in controversy exceeds $75,000.  (Dkt. No. 1 ¶ 7; see Dkt.

---

[2] Although Mr. Applebaum alleges a claim under UCC § 2-711 as a cause of action, we note that this section provides a remedy for buyers who rightfully reject or revoke acceptance of nonconforming goods.  As discussed in section III.D.2.a. infra, Mr. Applebaum did not reject or revoke acceptance of the Boat so we discuss his remedies under UCC § 2-714.

Nos. 1–3).  The Court may also exercise supplemental jurisdiction over Mr. Applebaum's state law unjust enrichment and conversion claims.  See 28 U.S.C. § 1367.

Personal jurisdiction over Defendants is a "necessary prerequisite to entry of a default judgment."  Pinzon v. 467 Star Deli Inc., No. 22 Civ. 6864 (JGK) (SLC), 2023 WL 5337617, at *4 (S.D.N.Y. July 31, 2023), adopted by, 2023 WL 5334757 (S.D.N.Y. Aug. 18, 2023).  The Court has personal jurisdiction over Magonis US, whose principal place of business is in New York, and Magonis SL "who engaged in business activities directed toward the State of New York."  (Dkt. No. 1 ¶¶ 9–10).  See N.Y. C.P.L.R. § 302(1).

Venue is proper in this District because Defendants submitted to this Court's jurisdiction under the Purchase Agreement.  (See Dkt. No. 29-11).  See 28 U.S.C. § 1391(b)(3).

### 2.  MMWA

"[T]o state a claim under the MMWA, [a] plaintiff][] must adequately plead a cause of action for breach of written or implied warranty under state law."  Vaglica v. Reckitt Benckiser LLC, 699 F. Supp. 3d 200, 211 (E.D.N.Y 2023).  Here, Mr. Applebaum alleges that Defendants violated an express warranty and the implied warranty of merchantability as to the Boat.  (Dkt. No. 1 ¶¶ 34–44).

### a.  Express warranty

To plead a cause of action for breach of express warranty under New York law, "a plaintiff must show (1) a material statement constituting a warranty, (2) the buyer's reliance on this warranty as a basis for their purchase, (3) breach of the warranty and (4) injury to the buyer caused by the breach."  Lin v. Canada Goose US, Inc., 640 F. Supp. 3d 349, 362 (S.D.N.Y. 2022).  Here, the Purchase Agreement contains a provision warranting, inter alia, that the Boat and its

accessories are "free from material and manufacturing faults" for a period of two years. (Dkt. No. 29-11 at 4). Mr. Applebaum relied on the warranty when he purchased the Boat. (Dkt. No. 1 ¶ 36). When Defendants sold the Boat to him with multiple "nonconformities" and "manufacturing faults[,]" Defendants breached the warranty. (Id. ¶¶ 38, 21–26). Mr. Applebaum alleges damages arising from the breach of the warranty because he could not use the Boat and Defendants would not accept its return, resulting in a loss of the purchase price and recurring storage and insurance fees. (Id. ¶ 43). Accordingly, Mr. Applebaum has sufficiently demonstrated Defendants' liability for breach of an express warranty, and therefore, breach of the MMWA.

### b. Implied warranty of merchantability

"A breach of implied warranty of merchantability occurs when the product at issue is 'unfit for the ordinary purposes for which such goods are used.'" Dashnau v. Unilever Mfg. (US), Inc., 529 F. Supp. 3d 235, 249 (S.D.N.Y. 2021). Under New York's UCC, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Brodie v. Green Spot Foods, LLC, 503 F. Supp. 3d 1, 8 (S.D.N.Y. 2020) (quoting N.Y. U.C.C. § 2-314(1)). "Liability for breach of warranty [of merchantability] depends on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners." Colpitts v. Blue Diamond Growers, 527 F. Supp. 3d 562, 590 (S.D.N.Y. 2021).

"To state a plausible claim for breach of the implied warranty of merchantability, [] a plaintiff must allege: (1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the

defect is the proximate cause of the harm." Lopez v. Hero Rider USA, LLC, No. 22 Civ. 1428 (RPK) (MMH), 2023 WL 6226263, at *6 (E.D.N.Y. Sept. 26, 2023).  A plaintiff must allege privity with the defendant to establish a claim for breach of implied warranty in New York where only economic loss is alleged.  Colpitts, 527 F. Supp. 3d at 591.  A plaintiff is further required to provide the defendant with notice of the breach under the UCC.  Campbell v. Whole Foods Mkt. Grp., Inc., 516 F. Supp. 3d 370, 392 (S.D.N.Y. 2021).

Here, Mr. Applebaum alleges that the Boat is unfit for its ordinary purpose because the electric propulsion motor and electric control unit do not work, and the Boat lacks an engine cut-off switch.  (Dkt. No. 1 ¶ 21).  He also alleges that the Boat failed to comply with safety regulations including certification and capacity labels.  (Id. ¶ 23).  Further, Mr. Applebaum alleges that the identification number on the hull was related to a company other than Defendants' and was improper as to form.  (Id. ¶ 24).  Based on the Boat's defects and regulatory non-compliance, Mr. Applebaum alleges that he was harmed because he could not use the Boat, resulting in a loss of the purchase price and recurring storage and insurance fees.  (Id. ¶ 43).  In addition, Mr. Applebaum was in privity with Defendants by virtue of the Purchase Agreement.  (Id. ¶ 34).  Mr. Applebaum also gave notice of the breach to Defendants.  (Id. ¶ 27).  Accordingly, Mr. Applebaum has sufficiently demonstrated Defendants' liability for breach of the implied warranty of merchantability, and therefore, breach of the MMWA.

### 3. Unjust enrichment and conversion

Under New York law, "[t]o establish unjust enrichment, the plaintiff must show (1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."  Campbell,

516 F. Supp. 3d at 393.  To establish conversion in New York, "the plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights."  Advanced Knowledge Tech, LLC v. Fleitas, No. 21 Civ. 992 (PKC), 2021 WL 6126966, at *6 (S.D.N.Y. Dec. 28, 2021).

Unjust enrichment and conversion claims are unavailable when they "simply duplicate[], or replace[], a conventional contract or tort claim."  Campbell, 516 F. Supp. 3d at 394; see Caplan v. Dollinger, No. 24 Civ. 7996 (JMF), 2025 WL 1808530, at *9 (S.D.N.Y. June 30, 2025) (dismissing conversion claim where it relied on the same facts as breach of contract claim).  Claims are duplicative of one another when they arise from the same facts and fail to allege distinct damages.  NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008).

Here, Mr. Applebaum's unjust enrichment and conversion claims arise from the same facts and allege the same damages as the MMWA claim in that all three claims relate to Mr. Applebaum's purchase of the Boat and its accessories and involve damages consisting of the cost of the Boat and its accessories, as well as the costs to store and insure the Boat.  (Compare Dkt. No. 1 ¶¶ 30–44, with Dkt. No. 1 ¶¶ 51–53, and Dkt. No. 1 ¶¶ 57–60).  Therefore, they are duplicative of his MMWA claim for which the Court has found Defendants liable.  (See section III.C.2, supra).  Therefore, we respectfully recommend that the unjust enrichment and conversion claims be dismissed.  See Green Mountain Electric Supply, Inc. v. Power Mfg., LLC, No. 24 Civ. 1060 (MAD) (PJE), 2025 WL 2577202, at *5 (N.D.N.Y. Sept. 5, 2025) (dismissing unjust enrichment claim where court found that plaintiff sufficiently pled breach of contract claim); Maxus Leasing Grp., Inc. v. Kobelco Am., Inc., No. 04 Civ. 518 (FJS) (DEP), 2007 WL 655779, at *4 (N.D.N.Y. Feb.

26, 2007) (dismissing conversion claim where it was "identical" to breach of warranty claim in that plaintiff sought to "recover the identical contractual benefit of the bargain or purchase price").

Accordingly, we respectfully recommend that Defendants be held liable with respect to the MMWA Claim, and that Mr. Applebaum's remaining claims be dismissed.

### D. Damages

#### 1. Evidentiary basis

No party has requested a hearing on the issue of damages.  The Court must first determine whether Mr. Applebaum has provided sufficient evidence to support his claimed damages.  See Transatlantic Marine, 109 F.3d at 111; Bleecker v. Zetian Sys., Inc., No. 12 Civ. 2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013).  In the First Damages Submission, Mr. Applebaum provides the Wooster Declaration and attached eleven exhibits to support his claim for damages. (Dkt. Nos. 29–29-11).  In the Supplemental Damages Submission, he provides a valuation of the Boat as accepted.  (Dkt. No. 39-1).

Despite two warnings from the Court (Dkt. Nos. 34; 36), Defendants have not responded to the Damages Submissions.  The Court thus finds that Mr. Applebaum has met his evidentiary burden as to damages.  Therefore, the Court will conduct its damages inquest based solely on the Damages Submissions, which provide a sufficient basis from which to calculate damages.  See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) ("[A] district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and

documentary evidence."); <u>Perez v. 50 Food Corp.</u>, No. 17 Civ. 7838 (AT) (BCM), 2019 WL 7403983, at *3 (S.D.N.Y. Dec. 4, 2019); Fed. R. Civ. P. 55(b)(2).

### 2. **Damages for breach of warranty**

#### a. **Cost of the Boat and accessories**

Mr. Applebaum seeks to recover $92,150 for the entire purchase price of the Boat and its accessories under the theory that he properly rejected the Boat by notifying Defendants of his rejection.  (Dkt. Nos. 29 ¶ 8; 30 at 11; 39 at 2).  Mr. Applebaum has not established, however, that he rejected the Boat – which he continues to possess to this day – and therefore we consider damages for breach of warranty of <u>accepted</u> non-conforming goods under N.Y. U.C.C. § 2–714.

To establish entitlement to recover for non-conforming goods, a plaintiff must "(1) show that [he] notified [Defendants] of the breach within a reasonable time; (2) prove that [Defendants] breached the express or implied warranties in the contract; and (3) provide a reasonable measure of damages.  <u>Weihai Lianqiao Internat'l Coop Grp. Co., Ltd. v. A Base IX Co. LLC</u>, No. 21 Civ. 10753 (DEH), 2025 WL 2029916, at *23 (S.D.N.Y. July 21, 2025) (citing N.Y. U.C.C. §§ 2-607, 2-714).  The measure of damages for breach of warranty of accepted non-conforming goods is "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."  <u>Id.</u> at *22 (quoting N.Y. U.C.C. ¶ 2–714(2)).

Here, the First Damages Submission asserts that the value of the Boat is the purchase price of $77,900[3] (Dkt. No. 29 ¶ 8; see Dkt. No. 29-6), and the Supplemental Damages Submission provides evidence that the value of the Boat as accepted is $58,000. (See Dkt. No. 39-1) ("[T]he value of the delivered boat, assumed to be in regulatory compliance, [is] about $58,000."). Accordingly, the difference between the value of the Boat as warranted and as accepted is $19,900 ($77,900 - $58,000). Mr. Applebaum does not claim that the Boat's accessories were non-conforming or defective in any way. Therefore, we respectfully recommend that Mr. Applebaum be awarded $19,900 as damages for the Boat and that Mr. Applebaum be awarded no damages for the cost of the Boat's accessories.

### b. Sales Tax

Mr. Applebaum seeks to recover $5,540 in sales tax that he paid on the Boat and supports this request with a sales tax report. (Dkt. No. 29-7). Based on the Boat's purchase price of $77,900, it appears that the sales tax Mr. Applebaum paid on the Boat was 7% of the purchase price. Applying that same percentage to the award of $19,900 for the Boat, Mr. Applebaum would have paid $1,393 in sales tax if he purchased the Boat for $19,900.[4] Because Mr. Applebaum adequately substantiated his request for sales tax, we respectfully recommend that Mr. Applebaum be awarded $1,393 in sales tax.

### c. Incidental damages

---

[3] Although Mr. Applebaum obtained a valuation of a new and fully functional Magonis E-550 in 2022 of "about $90,000," the correct measure of the Boat's value as warranted is the purchase price or contract price. See City of New York v. Pullman Inc., 662 F.2d 910, 916 (2d Cir. 1981) (determining that the measure of goods as warranted under the UCC was the contract price); Matter of Barney Schogel, Inc., 12 B.R. 697, 719 (Bankr. S.D.N.Y. 1981) ("Generally, the contract price offers strong evidence of the value of the goods as warranted.").

[4] .07 * 19,900 = 1,393.

Mr. Applebaum also seeks to recover other incidental costs, including $4,320 for marina storage fees, $564 for an insurance premium, and $17,552.80 in prejudgment interest. (Dkt. No. 29 ¶¶ 8–9). Section 2–714 of the U.C.C. provides, "[i]n a proper case any incidental and consequential damages . . . may also be recovered." N.Y. U.C.C. § 2–714(3). Incidental damages under the U.C.C. include

> expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

N.Y. U.C.C. § 2–715.

### i.  <u>Marina storage fees</u>

Mr. Applebaum can recover the cost of storing the Boat as an incidental damage because it is a "reasonable expense incident to the [] breach." N.Y. U.C.C. § 2–715. Mr. Applebaum provides an executed "Twins Creek Marina Lease" showing that Mr. Applebaum agreed to pay $4,320 for a twelve-month lease. (Dkt. No. 29-8). We find this evidence sufficient to substantiate the storage cost. Accordingly, we respectfully recommend that Mr. Applebaum be awarded $4,320 in marina storage fees.

### ii.  <u>Insurance premium</u>

Mr. Applebaum's request for $564 for the amount he paid to insure the Boat is also considered a "reasonable expense incident to the [] breach." N.Y. U.C.C. § 2–715. Mr. Applebaum provided a "Declarations Page" demonstrating that he insured the Boat and paid a premium of $564, which we find to be adequate substantiation of the insurance premium cost. (<u>See</u> Dkt. No. 29-9). Accordingly, we respectfully recommend that Mr. Applebaum be awarded $564 for the insurance premium.

### iii. **Prejudgment interest**

Mr. Applebaum is entitled to prejudgment interest as a part of incidental damages under the UCC.  See Hidden Brook Air, Inc. v. Thabet Aviation Internat'l Inc., 241 F. Supp. 2d 246, 276 (S.D.N.Y. 2002).  Absent clear authority regarding prejudgment interest under the MMWA, because the parties are diverse, "state law governs the award of pre-judgment interest."  Sung Taek Kwon v. Leg Res., Inc., No. 15 Civ. 9658 (RWL), 2018 WL 2316630, at *4 (S.D.N.Y. May 7, 2018) (citing Schipani v. McLeod, 541 F.3d 158, 164 (2d Cir. 2008)).  "Under New York law, '[i]nterest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred.'" Seacor Marine LLC v. White Marlin Operating Co., LLC, No. 23 Civ. 8081 (JGLC) (HJR), 2025 WL 1259999, at *6 (S.D.N.Y. May 1, 2025) (quoting N.Y. C.P.L.R. § 5001(b)).  The applicable statutory pre-judgment interest rate is nine percent per annum.  See N.Y. C.P.L.R. § 5004.  "Pre-judgment interest is computed as the per diem interest ([damages award]*(0.09/365)) multiplied by the number of days in the pre-judgment interest period."  Asesoral Bus. Partners, LLC v. Seatech Worldwide Corp., No. 19 Civ. 11512 (AJN) (SLC), 2021 WL 6755016, at *6 (S.D.N.Y. Dec. 16, 2021).

Here, Mr. Applebaum requests prejudgment interest at the statutory rate of nine percent from August 1, 2023, the date that Mr. Applebaum claims he requested a refund from Defendants. (See Dkt. No. 29 ¶ 9).  Consistent with Section 5004 of the CPLR, we respectfully recommend that prejudgment interest be awarded at a rate of nine percent per annum on the

17

total compensatory damages amount of $26,177[5] from August 1, 2023 to the present, which is

$5,501.85.[6] <u>See</u> N.Y. C.P.L.R. § 5004.

### 3. <u>Attorneys' fees</u>

#### a. <u>Legal standard</u>

The MMWA allows a plaintiff to recover attorneys' fees. <u>See</u> <u>Lin</u>, 640 F. Supp. 3d at 364.

The district court has broad discretion to determine the amount to be awarded. <u>Vincent v.</u>

<u>Comm'r of Soc. Sec.</u>, 651 F.3d 299, 307 (2d Cir. 2011). In <u>Arbor Hill Concerned Citizens</u>

<u>Neighborhood Ass'n v. Cnty. of Albany</u>, 522 F.3d 182 (2d Cir. 2008), the Second Circuit articulated

the method for calculating reasonable attorneys' fees: a reasonable hourly rate multiplied by a

reasonable number of hours extended on the work constitutes the "presumptively reasonable

fee," also known as the "lodestar." <u>Kreisler v. Second Avenue Diner Corp.</u>, No. 10 Civ. 7592 (RJS),

2013 WL 3965247, at *1 (S.D.N.Y. July 31, 2013). A court using the lodestar method sets the

lodestar, then considers "whether, in light of variables such as the difficulty of the case, it should

adjust the lodestar before settling on the reasonable fee." <u>Arbor Hill</u>, 522 F.3d at 187.

To aid in the court's analysis, a fee application should be supported by "contemporaneous

time records" relaying the rates charged and hours worked by each attorney. <u>N.Y. State Ass'n</u>

<u>for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1154 (2d Cir. 1983). The attorneys "should

maintain billing time records in a manner that will enable a reviewing court to identify distinct

claims." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983); <u>see</u> <u>Themis Cap. v. Dem. Rep. Congo</u>, No.

---

[5] $19,900 in breach of warranty damages + $1,393 in sales tax + $4,320 in storage fees + $564 in insurance premium = $26,177.

[6] $26,177 in compensatory damages * (.09/365) = 6.45 per day * 853 days = $5,501.85. If this Report and Recommendation is adopted, this calculation would be updated to the date of entry of judgment.

09 Civ. 1652 (PAE), 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014) (reducing hours by twenty percent for "impermissibly broad" block billing). A court should look at the "nature of the legal matter and context of the fee award in considering the reasonable rate and reasonable time spent on the matter." Tessemae's LLC v. Atlantis Cap. LLC, No. 18 Civ. 4902 (KHP), 2019 WL 2635956, at *3 (S.D.N.Y. June 27, 2019).

To determine the hourly rate, a court considers "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr., 652 F.3d 277, 289–90 (2d Cir. 2011). In addition, the Second Circuit has a "forum rule" requiring the use of "hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." Id. at 289. The Court's determination of the reasonable hourly rate is aided by the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

To determine the reasonable number of hours worked, the court should strike a balance "between principles of thoroughness and efficiency." LCS Grp. LLC v. Shire LLC, 383 F. Supp. 3d 274, 280 (S.D.N.Y. 2019). The court must examine the amount of time spent on each task and decide "how much of that time was reasonably expended given the scope and complexity of the litigation." Pichardo v. C.R. Bard, Inc., No. 09 Civ. 7653 (SHS), 2015 WL 13784565, at *4 (S.D.N.Y. Jan. 26, 2015). The court should also consider the number of attorneys involved. Tessemae's LLC, 2019 WL 2635956, at *5. The court can rely on "its own familiarity with the case, as well as its experience with the parties' evidentiary submissions and arguments." Kreisler, 2013 WL 3965247, at *3.

19

The court may reduce the hours spent on the litigation to exclude excessive, redundant, or otherwise unnecessary time.  Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (citing Hensley, 461 U.S. at 434); see LCS Grp. LLC, 383 F. Supp. 3d at 281 ("A court may apply an across-the-board reduction to effectuate the reasonable imposition of fees."); see MSC Mediterranean Shipping Co. Holdings S.A. v. Forsyth Kownacki LLC, No. 16 Civ. 8103 (LGS), 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (reducing fees for unopposed motion for default judgment in a breach of contract case; excluding a senior partner's time because "the matter did not warrant the involvement of two senior partners"; and cutting paralegal's time in half); see also Pichardo, 2015 WL 13784565, at *7 (reducing attorneys' hours by forty percent because the recorded time addressed only one relevant issue).  Ultimately, "[t]he essential goal in shifting fess (to either party) is to do rough justice, not to achieve auditing perfection."  Fox v. Vice, 563 U.S. 826, 838 (2011).

### b.  Application

Mr. Applebaum seeks attorneys' fees and costs in the amount of $21,828.93 for the work performed by four timekeepers at Palmer Biezup & Henderson LLP (the "Firm"), from August 1, 2023 through April 30, 2024.  (Dkt. No. 29 ¶ 10; see Dkt. No. 29-10).

### i.  Reasonable hourly rates

Mr. Applebaum requests that the Court award an hourly rate of $320 for Daniel Wooster (which increases to $325 for fees incurred after January 1, 2024), $300 for Charles Neely, $175–$180 for Caitlin Cassidy, and $180 for Lydia Houze.  (See Dkt No. 29-10).  Mr. Applebaum does not identify whether the three timekeepers other than Mr. Wooster are attorneys or paraprofessionals, nor does he identify the level of experience of any of the four timekeepers.

(See id.)  Nevertheless, a review of the Firm's website indicates that Mr. Wooster and Mr. Neely are partners.[7]  Mr. Wooster has been practicing with the Firm for approximately 22 years and Mr. Neely for 17 years.[8]  Ms. Cassidy and Ms. Houze are not listed on the Firm's website as attorneys, but given their requested rate, the Court presumes that they performed paralegal work on this matter.

"In setting the reasonable hourly rate, a court must determine what a reasonable paying client would be willing to pay for the legal services, in other words, the appropriate market rate for counsel over the course of the number of hours appropriately worked."  De La Paz v. Rubin & Rothman, LLC, No. 11 Civ. 9625 (ER), 2013 WL 6184425, at *10 (S.D.N.Y. Nov. 25, 2013).  "Courts are also to consider that a reasonable client wishes to 'spend the minimum necessary to litigate the case effectively.'"  Shepherd v. Law Offices of Cohen & Slamowitz, LLP, No. 08 Civ. 6199 (CM) (LMS), 2010 WL 4922314, at *2 (S.D.N.Y. Nov. 29, 2010) (quoting Arbor Hill, 522 F.3d at 190).  Determining the reasonable hourly rate requires "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant[']s counsel," which may "include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'"  De La Paz, 2013 WL 6184425, at *10 (quoting Farbotko v. Clinton Cnty. of N.Y., 433 F.3d 204, 209 (2d Cir. 2005)).  Reasonable hourly rates may "var[y] by both practice area and location," and "should be current rather than historic."  Dunn v.

---

[7] See https://www.pbh.com/our-attorneys/ (last visited Nov. 26, 2025).  We may appropriately take judicial notice of the attorney descriptions on the Firm's public website.  See Lee v. Springer Nature Am., Inc., 769 F. Supp. 3d 234, 247 (S.D.N.Y. 2025) (explaining that "a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination").
[8] Id.

Advanced Credit Recovery Inc., No. 11 Civ. 4023 (PAE) (JLC), 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1, 2012), adopted by, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012).

Courts in this District awarding attorneys' fees in commercial matters have found rates for partners in the range of $350 to $450 to be reasonable. See, e.g., Byline Bank v. SDS Dining Corp., No. 22 Civ. 6439 (JGK) (GWG), 2024 WL 1422812, at *8 (S.D.N.Y. Apr. 3, 2024) (finding partner hourly rate of $350, "at the lowest end of rates typically award[ed] to partners in breach of contract cases," to be reasonable); Euro Pacific Cap., Inc. v. Bohai Pharmaceuticals Grp., Inc., No. 15 Civ. 4410 (VM) (JLC), 2018 WL 1229842, at *8 (S.D.N.Y. Mar. 9, 2018) (finding hourly rate of $375 for attorney with 30 to 40 years' experience to be reasonable); Carlton Group, Ltd. v. Par-La-Ville Hotel & Residences Ltd., No. 14 Civ. 10139 (ALC), 2016 WL 3659922, at *3 (S.D.N.Y. June 30, 2016) (collecting cases finding $450 to be reasonable hourly rate for experienced partners and senior attorneys); Shihan Chen v. Arts Nail Putnam Valley, Inc., No. 14 Civ. 3037 (ALC) (JCF), 2015 WL 2381033, at *1 (S.D.N.Y. May 13, 2015) (finding hourly rate of $350 reasonable for principal of small firm). Because Mr. Wooster and Mr. Nealy's requested rates fall below this range, we find that they are reasonable. Accordingly, we respectfully recommend that Mr. Wooster be awarded an hourly rate of $320 for fees incurred between August 1, 2023 and December 31, 2023 and $325 for fees incurred between January 1, 2024 and April 30, 2024, and that Mr. Nealy be awarded an hourly rate of $300.

With respect to paralegals working on commercial litigation, courts in this District generally award hourly rates in the range of $100 to $250. See, e.g., Dakus v. Koninklijke Luchtvaart Maatschappij, N.V., No. 22 Civ. 7962 (RA) (RWL), 2025 WL 1183676, at *5 (S.D.N.Y. Apr. 4, 2025) (reducing paralegal hourly rate to $150), adopted by, 2025 WL 1184012 (S.D.N.Y.

22

Apr. 23, 2025); K2M Design, Inc. v. Schmidt, No. 22 Civ. 3069 (MKV) (GS), 2023 WL 10674525, at

*12 (S.D.N.Y. Nov. 30, 2023) (finding paralegal rates of $150 to $200 to be reasonable), adopted

by, 2024 WL 1208910 (S.D.N.Y. Mar. 21, 2024); Bisnow LLC v. Lopez-Pierre, No. 20 Civ. 3441 (PAE)

(SLC), 2022 WL 17540573, at *23 (S.D.N.Y. Nov. 2, 2022) (finding hourly rate of $100 to be

reasonable for paralegal), adopted by, 2022 WL 17540349 (S.D.N.Y. Dec. 5, 2022).  The requested

rates for Ms. Cassidy and Ms. Houze fall within the range of rates typically granted for paralegals.

Because Mr. Applebaum fails to identify their level of experience, or confirm that they are in fact

paralegals, we respectfully recommend a reduced hourly rate of $125 for both Ms. Cassidy and

Ms. Houze.

### ii.  **Hours expended**

The Court may compensate a party only for "hours reasonably expended on the

litigation," and not for hours "that are excessive, redundant, or otherwise unnecessary."  See

Hensley, 461 U.S. at 433–34.  Should the Court find that certain hours are excessive, the Court

may deduct those hours, see, Tatintsian v. Vorotyntsev, No. 16 Civ. 7203, et al. (GHW), 2020 WL

2836718, at *6 (S.D.N.Y. June 1, 2020), or, alternatively, "'the [C]ourt has discretion simply to

deduct a reasonable percentage of the number of hours claimed as a practical means of trimming

fat from a fee application.'"  Rodriguez ex rel. Kelly v. McLoughlin, 84 F. Supp. 2d 417, 425

(S.D.N.Y. 1999) (quoting Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998).  "A party seeking

attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed,

and contemporaneous time records."  Echevarria v. Insight Med., P.C., 102 F. Supp. 3d 511, 516

(S.D.N.Y. 2015).  The records, however, need not specify "the exact number of minutes spent nor

the precise activity to which each hour was devoted nor the specific attainments of each

attorney." U.S. Football League v. Nat'l Football League, 704 F. Supp. 474, 477 (S.D.N.Y. 1989), aff'd, 887 F.2d 408 (2d Cir. 1989). "The critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." De La Paz, 2013 WL 6184425, at *13.

Here, Mr. Applebaum provided contemporaneous time records by timekeeper maintained by the Firm showing that the Firm spent a total of 67.2 hours on this litigation. (See Dkt. No. 29-10). We have reviewed the Firm's calculations and contemporaneous time records and conclude that the hours expended are reasonable. (Id.) The work performed related to this action included, for example, drafting a demand letter, the complaint, and motions, as well corresponding with Defendants' counsel and Mr. Applebaum. (See generally id.) Applying the reduction to the hourly rates of Ms. Cassidy and Ms. Houze recommended above, we respectfully recommend that Mr. Applebaum be awarded $20,317.50 in attorneys' fees.

### 4. Costs

The MMWA also allows a party to recover costs if that party prevails on a state law breach of warranty claim. See Hernandez v. Apple Auto Wholesalers of Waterbury LLC, 460 F. Supp. 3d 164, 187 (D. Conn. 2020). "As with attorneys' fees, [a] requesting party must substantiate [its] request for costs." Guo v. Tommy's Sushi, Inc., No. 14 Civ. 3964 (PAE), 2016 WL 452319, at *3 (S.D.N.Y. Feb. 5, 2016); see also Euceda v. Preesha Operating Corp., No. 14 Civ. 3143 (ADS) (SIL), 2017 WL 3084490, at *4 (E.D.N.Y. June 30, 2017) ("In the absence of adequate substantiation, a party is not entitled to recover costs."), adopted by, 2017 WL 3084408 (E.D.N.Y. July 18, 2017).

Mr. Applebaum seeks reimbursement of the costs incurred by the Firm, which include service fees, filing fees, delivery fees, and postage. (See Dkt. No. 29-10 at 4, 9, 13). Because Mr.

Applebaum provided the Court with contemporaneous documentation showing that the Firm paid the amounts for which Mr. Applebaum now seeks reimbursement, Mr. Applebaum has adequately substantiated his request for costs.  See Sanchez v. Jyp Foods Inc., No. 16 Civ. 4472 (JLC), 2018 WL 4502008, at *17 (S.D.N.Y. Sept. 20, 2018) (noting that adequate substantiation is required for an award of costs).  In addition, the Firm reasonably incurred each of those costs in this action.  See Raymond James & Assoc. v. Vanguard Funding, LLC, No. 17 Civ. 3327 (VSB) (SDA), 2018 WL 8758763, at *6 (S.D.N.Y. Apr. 16, 2018) (awarding documented expenses for, inter alia, filing and service of process fees).  Accordingly, we respectfully recommend that Mr. Applebaum be awarded $1,138.43 in costs.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, we respectfully recommend that a default judgment in favor of Mr. Applebaum and against Defendants be entered, consisting of:

1.  Compensatory damages in the amount of $26,177.00, consisting of:

    a.  Breach of warranty damages in the amount of $19,900.00;

    b.  Sales Tax in the amount of 1,393.00;

    c.  Marina storage fees in this amount of $4,320.00;

    d.  Insurance premium in the amount of $564.00;

2.  Prejudgment Interest in the amount of $5,501.85;

3.  Attorneys' fees in the amount of $20,317.50; and

4.  Costs in the amount of $1,138.43.

Dated:      New York, New York
            December 1, 2025

**SARAH L. CAVE**
**United States Magistrate Judge**

\*                          \*                          \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Rearden.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

27